IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE | : | Chapter 11 |
| | : | |
| TRADE SECRET, INC. et al., | : | Bankr. No. 10-12153-KG |
| | : | Adv. Pro. No. 12-00031-KG |
| Debtor. | : | |
| | : | |
| REGIS CORPORATION, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | C.A. No. 12-854-LPS |
| | : | C.A. No. 13-291-LPS |
| HOUSTON BW, INC., | : | **CONSOLIDATED CASES** |
| | : | |
| Appellee. | : | |

## MEMORANDUM ORDER

At Wilmington this 7th day of July, 2014, having reviewed the Notices of Appeal filed by Appellant Regis Corporation ("Regis") of the United States Bankruptcy Court for the District of Delaware's Order Granting Motion to Enforce Order Dismissing Chapter 11 Cases (D.I. 1 ex. 1 ("Enforcement Order"))[1] and Order Granting Motion for Attorneys' Fees (C.A. No. 13-291-LPS at D.I. 1 ex. 1), as well as the papers filed in connection therewith;

IT IS ORDERED that the Appeals (D.I. 1; C.A. No. 13-291-LPS at D.I. 1) are DISMISSED, for the reasons discussed below.

1. <u>Relevant Background</u>.[2] In July 2010, the Debtors filed for Chapter 11 bankruptcy.

---

[1] Unless otherwise specified, all D.I. numbers in this memorandum refer to C.A. No. 12-854-LPS.

[2] The Court presumes the parties' extensive familiarity with the background of this case.

1

(Bankr. D.I. 1) At the time the Debtors filed, they owed Regis over $32 million. (Bankr. D.I. 2 ¶ 15) In September 2010, the Bankruptcy Court authorized the sale of the Debtors' assets pursuant to an Asset Purchase Agreement (the "APA"). (Bankr. D.I. 464; *see also* D.I. 8 ex. E) Pursuant to the APA, Regis was the "Purchaser" of the Debtors' assets, while Pure Beauty Salons & Boutiques, Inc. and BeautyFirst Franchise Corp. (collectively, the "Pure Beauty Entities") – which were created during the pendency of the Debtors' Chapter 11 proceedings – were assignees. (*See generally* Bankr. D.I. 225; *see also* Enforcement Order at 3) The Pure Beauty Entities, as well as the rest of the Debtors, were owned by the Luborsky Family Trust II 2009 and its sole beneficiaries: Brian Luborsky, who was the CEO and director of Debtor Trade Secret, Inc., and his family. (*See generally* Bankr. D.I. 2)

2. On October 12, 2010, after the assets were sold, the Debtors filed a motion for an order approving dismissal of the Debtors' Chapter 11 cases. (Bankr. D.I. 534; *see also* D.I. 8 ex. G (the "Dismissal Motion")) On January 31, 2011, the Bankruptcy Court entered an order granting the Dismissal Motion. (Bankr. D.I. 767; *see also* D.I. 8 ex. H (the "Dismissal Order")) The Dismissal Order provides, in part, that the "Purchaser, its successors and assigns shall, pay ... any and all amounts as may be awarded, if any, to the Franchisees in connection with any pending Arbitration Proceeding." (*Id.* ¶ 6) The Dismissal Order further provides that "[a]ll terms not otherwise defined herein shall be given the meanings ascribed to them in the [Dismissal] Motion." (*Id.* at n.2) The Dismissal Order also specified that the Bankruptcy Court retained jurisdiction to enforce payment. (*Id.* ¶ 6)

3. After an arbitrator entered an award in favor of Houston BW, Inc. ("Houston"), a franchisee of the Debtors, Houston filed a notice of the award with the Bankruptcy Court.

(Bankr. Ct. D.I. 789) In November 2011, after Houston was unsuccessful in its efforts to obtain payment from either the Pure Beauty Entities or Regis, Houston filed a motion in the Bankruptcy Court to enforce the Dismissal Motion against Regis. (Bankr. D.I. 790) The Bankruptcy Court granted the motion and, on June 8, 2012, required Regis to pay Houston the arbitration award as per the Dismissal Order. (Bankr. D.I. 831) Subsequently, the Bankruptcy Court found that the arbitration agreement also required that Regis pay Houston's reasonable attorneys' fees. (Bankr. D.I. 853)

4.  Parties' Contentions. Regis argues that the Bankruptcy Court's Enforcement Order should be reversed because Houston has no right to recover from Regis under the APA, the Assignment Agreement (which named the Pure Beauty Entities as the Assignees), or the Bankruptcy Court's order approving the sale of the Debtors' assets. (D.I. 8 at 12) Regis maintains that "the parties never intended that Regis would assume any contracts or liabilities" of the Debtors and that this intent was disclosed multiple times to the Bankruptcy Court. (*Id.; see also* APA § 12.3 ("In the event of any assignment to [Pure Beauty] pursuant to this Section 12.3(a), [Regis] shall be relieved of any liability or obligation hereunder.")) Regis also contends that the Dismissal Order does not vest Houston with the right to recover the arbitration award because, "reading the documents [Dismissal Motion and the APA] as a whole . . . it is clear that no obligations were being assumed by Regis" under the Dismissal Order. (D.I. 8 at 15) Finally, Regis asks the Court to reverse the Bankruptcy Court's award of attorneys' fees because there was no separate agreement between the parties for attorneys' fees or, in the alternative, because only reasonable attorneys' fees may be awarded, but the Bankruptcy Court awarded Houston more than that amount. (*Id.* at 17-18)

5. Houston counters that Regis is attempting to collaterally attack the finality of the Dismissal Order, which was entered more than a year prior to Regis' filing of a notice of appeal with this Court. (D.I. 9 at 1) Further, because Regis may only properly appeal the Bankruptcy Court's order *enforcing* the Dismissal Order, the issue before this Court is simply whether the Bankruptcy Court "properly interpreted the Dismissal Order in its Enforcement Order." (*Id.* at 1-2) Not only did the Bankruptcy Court commit no clear error, Houston contends, but there is also ample evidence to support that Court's findings of fact. (*Id.* at 2) Similarly, Houston notes that because the franchise agreements provide for the award of attorneys' fees to the prevailing party in an arbitration, such fees are a necessary part of what Regis owes Houston as a cure. (*Id.* at 15-16)

6. Standard of Review. This Court has jurisdiction to entertain an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).[3] In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).

7. A bankruptcy court's interpretation of its own order is subject to a review for abuse of discretion unless the issue on review presents only a question of law, in which case it is subject to a *de novo* standard. *See In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3d Cir. 2007); *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150-51 (2009) ("If it is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent, it is all the clearer that a court should enforce a court order, a public

---

[3]The Court's jurisdiction over this matter is not in dispute. (*See* D.I. 8 at 1; D.I. 12 at 2)

governmental act, according to its unambiguous terms.") (internal citation omitted). Therefore, a bankruptcy court's interpretation of its own order is entitled to substantial deference. *See In re Shenango*, 501 F.3d at 346.

8.      Discussion. An examination of the record on appeal reveals that the Bankruptcy Court did not abuse its discretion in granting appellee's motion to enforce the Dismissal Order. As Houston correctly notes, a bankruptcy court is afforded considerable deference when construing its own orders, as was the case here. The determinative issue before the Bankruptcy Court was whether the Bankruptcy Court's Dismissal Order itself – not the APA or sale documents[4] – required Regis to pay the final arbitration award. (*See* D.I. 1 ex. 1 at 6 ("[T]he Court finds that Regis was the "Purchaser" in the ***Dismissal Order*** and is therefore liable to Houston.") (emphasis added)) The Bankruptcy Court did not abuse its discretion in interpreting its own Dismissal Order. To the contrary, the Dismissal Order adopts definition of "Purchaser" from the Dismissal Motion, which in turn unambiguously included Regis within its definition of "Purchaser." *Compare* Appellant's Ex. H (Dismissal Order stating: "All terms not otherwise defined herein shall be given the meanings ascribed to them in the Motion.") *with* Appellant's Ex. G at 3 (defining "[t]he Debtors, Regis Corporation ('Regis') and Regis's assignees, Pure Beauty Salons & Boutiques, Inc. and BeautyFirst Franchise Corp. (together, the 'Assignees' and collectively with Regis, [as] the 'Purchaser')); *see also* D.I. 8 at 15; D.I. 9 at 8-9. Regardless of whether Regis' present appeal is barred by *res judicata*, the Enforcement Order constitutes a reasonable interpretation by the Bankruptcy Court of its own Dismissal Order, and, hence, an act

---

[4]Nevertheless, the APA and Bill of Sale also define Regis as "Purchaser." (*See* D.I. 9 at 11-12 and evidence cited therein)

this Court will not disturb on appeal. Even assuming that some or all of the parties to the APA intended that Regis would not assume the Debtors' liabilities to Houston, the Bankruptcy Court's determination that its (unappealed) Dismissal Order places these liabilities with Regis does not constitute an abuse of discretion.

9. The Court similarly finds that the Bankruptcy Court did not err in awarding attorneys' fees to Houston. The parties do not dispute that the franchise agreements require the award of attorneys' fees; rather, Regis disputes whether the franchise agreement's provision requiring attorneys' fees applies to Regis at all (D.I. 8 at 18) and whether the Bankruptcy Court erred in determining the specific amount of the award (*id.* at 17, 19-20). As already noted, the Bankruptcy Court did not abuse its discretion in finding that Regis was liable for the cure costs associated with the franchise agreements (which themselves provide for the award of attorneys' fees). (*See* Bankr. D.I. 826 ex. F) Furthermore, Regis has not met its burden to show that the Bankruptcy Court clearly erred when it found, after "careful[] review," that Houston's attorneys' fees were "reasonable, necessary, and appropriate." (C.A. No. 13-291-LPS at D.I. 1 ex. 1)

Accordingly, the Bankruptcy Court orders are AFFIRMED, this appeal is DISMISSED, and the Clerk of Court is directed to CLOSE this case.

_____
UNITED STATES DISTRICT JUDGE